UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SKY JET M.G. INC.,

       Plaintiff,

       v.

VSE AVIATION SERVICES, LLC,

       Defendant.

Case No. 23-2210-HLT-ADM

## <u>MEMORANDUM AND ORDER</u>

This case arises from a so-called "hot start" of a 1996 Beech 1900D twin engine, turbo-prop aircraft in which, during attempts to start the engine, engine temperatures rose significantly and caused severe damage to the left engine. The aircraft is owned by plaintiff Sky Jet M.G. Inc. ("Sky Jet"). The day before the hot-start incident, Sky Jet had replaced the aircraft's fuel-control unit ("FCU") with an FCU that defendant VSE Aviation Services, LLC ("VSE") had recently overhauled. Sky Jet contends that VSE did not properly overhaul the FCU, which caused the hot start by sending too much fuel to the engine. This matter is now before the court on VSE's Motion for Spoliation Sanctions. (ECF 78.) By way of this motion, VSE seeks sanctions for Sky Jet's failure to preserve the aircraft's cockpit voice recorder ("CVR") readouts from the hot-start incident. For the reasons explained below, the court finds that VSE is entitled to spoliation sanctions, but not the full range of the sanctions it seeks. Specifically, the court will order an adverse-inference jury instruction, preclude Sky Jet from offering testimony by the pilots who were operating the aircraft when the hot-start incident occurred, and award VSE its reasonable attorneys' fees and expenses incurred to discover what happened to the CVR readouts and in connection with the current motion.

## I.    BACKGROUND

The hot-start incident occurred on January 30, 2022.  As briefly explained above, Sky Jet contends the hot start was caused by the defective FCU that got contaminated during VSE's overhaul, causing the FCU to send too much fuel to the engine.  VSE disputes this, and instead contends that Sky Jet had begun having issues with the engine weeks earlier and further that, "no matter what the cause, the damage would have been prevented if the pilots had properly handled the situation."  (ECF 79, at 1.)  The pilots and mechanic who worked on the aircraft in the weeks before the hot start are no longer employed by Sky Jet and their whereabouts are unknown, but they are all believed to be in Canada.  (*Id.*)  The aircraft was, however, equipped with a flight data recorder ("FDR") and a cabin/cockpit voice recorder ("CVR").  The FDR records aircraft performance, power settings, and other characteristics relating to engine performance, while the CVR records voices and sounds inside the cockpit.  (ECF 79, at 2 & n.1.)

Sky Jet filed this lawsuit on May 9, 2023.  (ECF 1.)  Discovery opened in July, and the court entered a scheduling order setting a December 15 deadline for the parties to complete discovery.  (ECF 23, at 2, 4.)[1]  On August 31, VSE served its first set of written discovery requests, to which Sky Jet responded on September 29.  (ECF 26, 29.)  VSE's Request for Production ("RFP") No. 14 sought "any recording of the two starts that are the subject of the Complaint," to which Sky Jet responded, "None known."  (ECF 79-7, at 5, RFP No. 14.)

In late November, Sky Jet produced about 2,700 pages of documents, most of which were aircraft maintenance records.  Among those documents, the logbooks showed the aircraft's FDR

---

[1] The court later extended the parties' expert disclosure deadlines to December 1, 2023, and January 8, 2024; set a deadline of January 19, 2024, for expert depositions; and kept the deadline of February 16, 2024, for dispositive motions and motions challenging the admissibility of expert testimony.  (ECF 37, at 2.)

and CVR were re-installed on the aircraft in 2022[2] "AFTER READOUT."  (ECF 83-3, at 4.)  On November 30, VSE's counsel contacted Sky Jet's counsel to discuss VSE's position that RFP No. 14 included FDR and CVR recordings.  Sky Jet's counsel "stated that he had asked his client for this specific data and was told it no longer existed."  (ECF 79-8 ¶ 4.)

With discovery at that time set to close on December 15, VSE served a Rule 30(b)(6) notice to take Sky Jet's corporate representative deposition on December 14.  (ECF 79-14.)  Among other things, the topics included Sky Jet's answers and responses to VSE's discovery requests, Sky Jet's investigation into the cause of the hot starts, Sky Jet's information and knowledge as to why the FDR and CVR recordings were not preserved for litigation, Sky Jet's knowledge of the information on the FDR and CVR around the time of the alleged incident, and the "identity of the person or entity that took, has or had possession and control of read out and/or transcripts of the CVR and FDR recordings."  (*Id.*)  Sky Jet produced its President, Mathieu Gringas, to testify.  It was during that deposition that VSE first learned that Sky Jet's maintenance department had sent the FDR and CVR to Logic Air to have the data extracted into readouts.  (ECF 79-5, at 47:24-56:24.)  Gringas further testified that Sky Jet never received the FDR and CVR readouts back from Logic Air.  (*Id.*)  In response to a question about the possibility that the maintenance department might have received a copy of the CVR readout, Gringas testified that he "asked again yesterday and nobody there [in the maintenance department] has a copy."  (ECF 79-5, at 56:16-24.)

The next day, VSE deposed Sky Jet's former Director of Maintenance and now Chief Mechanic on the Floor, Gerry Letiec.  He testified that no one had asked for the CVR or FDR readouts in the past six months and that he never tried to find the readout from the recordings.

---

[2] The exact date on this logbook entry is unclear.

(ECF 79-3, at 76:1-10.)  Later that day, Sky Jet requested copies of the FDR and CVR readouts from Logic Air, and Logic Air sent what it found.  (ECF 79-4.)  Sky Jet determined that the readouts were for the wrong date and, upon inquiry, Logic Air explained that the CVR data was lost during a computer malfunction.  (*Id.*)  On December 20, VSE's counsel learned that Logic Air had sent the FDR and CVR data to Sky Jet, and she requested that Sky Jet produce that data as VSE had requested it in August of 2023.  (ECF 79-8 ¶ 6.)  On December 21, Sky Jet produced the FDR and CVR data, but did not mention that it was from the wrong flight.  (*Id.* ¶ 7; ECF 79-11.)

On January 2, 2024, VSE's counsel contacted Sky Jet's counsel to advise him that the CVR data was from the wrong flight and to ask that Sky Jet provide Logic Air with written authorization to work with VSE directly.  (*Id.* ¶¶ 8-9.)  VSE then sought a discovery hearing regarding the missing FDR- and CVR-related information.  (ECF 52-53.)  During a discovery conference on January 11, the court reopened discovery on the limited issue of data from the CVR and FDR from the hot-start incident, in part because by that time it appeared that spoliation may have occurred, so VSE was entitled to find out what happened to the missing readouts.  (ECF 57.)  The court also vacated the deadline for the parties to submit their proposed pretrial order and the pretrial conference setting and ordered the parties "to file a joint status report by the earlier of March 11, 2024, or 7 days after the parties believe discovery is complete with respect to this remaining discovery issue."  (*Id.*)

On January 31, 2024, Sky Jet's counsel sent a letter to Logic Air explaining that the court had ordered discovery into the missing data from the FDR.  (ECF 60-1.)  Sky Jet requested Logic Air's "voluntary cooperation with discovery related to the FDR and CVR data and recordings from January 30, 2022."  The letter was signed by Sky Jet's counsel as well as Gringas.  (*Id.*)

On March 11, the parties submitted a joint status report notifying the court that Sky Jet had produced the FDR readout information to VSE on March 5, but that Sky Jet still had not located a copy of the CVR data. (ECF 60, at 1.) The parties reported that Sky Jet had sent correspondence to Logic Air on January 31 seeking "Logic Air's agreement to limited discovery concerning the FDR and CVR," and VSE had also attempted to contact Logic Air, but Logic Air had "not responded to the parties' requests for voluntary discovery." (ECF 60, at 1.) The joint status report also stated that VSE had engaged Canadian counsel Louis-Philippe Constant. (*Id.* at 2.) Constant had first tried to work with Logic Air to secure its voluntary cooperation, but, when that was unsuccessful, he began the formal process of trying to secure this discovery from Logic Air via a subpoena issued by the Quebec Superior Court. (*Id.*) The court then directed the parties "to file another joint status report by the earlier of May 10, 2024, or 7 days after the parties believe discovery is complete with respect to this remaining discovery issue." (ECF 61.)

On May 10, the parties filed a joint status report that set forth their competing positions concerning the FDR, CVR, additional expert discovery, and the schedule. (ECF 62.) In this report, the court learned that VSE had served the discovery request in August 2023 seeking recordings of the two hot starts, to which Sky Jet had responded with "None known." (*Id.* at 3.) VSE reported that it only discovered Sky Jet had sent the CVR and FDR for readouts when it reviewed the aircraft logbooks and then learned during the 30(b)(6) corporate deposition that the CVR and FDR were sent to Logic Air for the readouts. VSE also explained its diligence in working to obtain the FDR and CVR data from Logic Air, including hiring Canadian counsel who was working with Logic Air and its counsel to secure a deposition, which it expected to complete by the end of June. (*Id.* at 3-4.) In addition, VSE reported that the FDR data Sky Jet originally produced turned out to be from an unrelated date and time, and, when Sky Jet did finally produce FDR data from the hot-

start incident, the FDR readouts did not contain any information about engine temperatures, which VSE said is normally captured on the FDR and would be "important to consider as to the cause(s) of the damage" to the engine.  (*Id*. at 4.)  As for the CVR data, both parties acknowledged that it was still missing.  Sky Jet reported that it "cannot locate any copy of the CVR readout received from Logic Air" and "Logic Air has advised the parties that Logic Air's copy of the CVR is deleted."  (*Id*.)  VSE said it was seeking Logic Air's deposition to "confirm that the data from the CVR was downloaded and sent to Sky Jet" and that "Logic Air no longer has access to the CVR data."  (*Id* at 6.)  VSE also claimed that, "[s]ince the Court issued its January 11, 2024 Order, Sky Jet has not assisted in any way to facilitate the securing of Logic Air's deposition."  (*Id*.)  The parties also addressed their positions regarding additional expert discovery.  Sky Jet proposed that both parties be afforded an opportunity to serve supplemental expert reports following the FDR and CVR discovery, to which VSE objected.  (*Id.* at 6-7.)

On May 21, in response to Sky Jet's request to discuss its proposed motion for leave to serve its supplemental expert report, the court convened a discovery conference to discuss (1) the timeliness of Sky Jet's supplemental expert report served on April 30 addressing recent discovery regarding the FDR; (2) potential spoliation issues related to engine temperature data that is normally captured on the FDR and the CVR that remains missing; and (3) VSE's diligence in pursuing the deposition of Logic Air and getting the deposition scheduled.  VSE reported that the deposition should occur in June.  The court directed the parties to file another joint status report within 7 days after the Logic Air deposition was completed and told the parties to include proposed case-management deadlines to move this case forward.  (ECF 66.)

On June 25, Logic Air produced its Production Manager, Marc Meagher, for deposition. He testified that Logic Air had sent Sky Jet the readouts on two identical disks with the CVR and

FDR data on each.  (ECF 79-15.)  Logic Air sent these DVDs in the same box that it returned the CVR and FDR units to Sky Jet.  (*Id.* at 12:4-15.)  Meagher also testified that Sky Jet had emailed Logic Air in November 2023 to see if Logic Air still had the FDR and CVR data available, and that Logic Air still had the FDR data but never found the CVR data.  (*See id.*)

Two days later, Logic Air produced its email communications with Sky Jet from the days following the hot-start incident.  (ECF 79-4, at 12-19; ECF 79-8 ¶ 16.)  They revealed that Sky Jet's Primary Responsible Maintenance Control Officer Patrick Labrie talked with Meagher on January 31, 2022 (the day after the hot-start incident) about "want[ing] to obtain and extract the vocal sound track and data information **for internal management purpose**."  (ECF 79-4, at 18-19 (emphasis added).)  Labrie emphasized to Meagher the importance of not erasing any data from the CVR and FDR, writing in red, bold, all-caps lettering "IMPORTANT DO NOT ERASE ANY DATA FROM BOTH UNIT."  (*Id.* at 18.)  Logic Air then downloaded the data from the units and, before sending the data to Sky Jet, Meagher emailed Labrie that, "The downloads are done and recorded on two DVDs they will be in the box with the units.…  The CVR channels can be listened to with a PC the one you want to listen to is Channel 4 This is the area mic.  **It's more interesting from the 30 minute mark**."  (*Id.* at 15 (emphasis added).)  Notably, Sky Jet never produced these emails between Sky Jet's Labrie and Logic Air's Meagher.  Instead, VSE received these emails from Logic Air on June 27, 2024, and had them translated from French to English.  (ECF 79-8 ¶ 16.)

On July 2, the parties filed another joint status report stating that they took Logic Air's deposition on June 25, that Logic Air made a document production on June 27, and "[d]iscovery concerning the FDR and CVR is complete."  (ECF 68.)  The report also included the parties' proposed case management deadlines.  (*Id.*)  The court's Second Amended Scheduling Order

entered on July 8 largely adopted the parties' proposed deadlines, including the deadlines by which they could supplement expert reports.  (ECF 69.)  Both parties served supplemental expert reports, and experts were deposed in October.  (ECF 70-73.)  The court held a final pretrial conference on December 3, and the pretrial order was entered on December 17.  (ECF 75, 81.)

VSE filed the current motion for sanctions on December 13.  VSE contends that Sky Jet spoliated evidence and thus seeks (1) dismissal of Sky Jet's complaint with prejudice or a default judgment against Sky Jet; (2) an adverse-inference jury instruction; (3) preclusion of testimony by Sky Jet's witnesses; and (4) attorneys' fees and expenses.  VSE contends that Sky Jet had a duty to preserve the CVR data from the hot-start incident but did not preserve it, that VSE has been prejudiced by the destruction of that relevant evidence, and that Sky Jet acted in bad faith by intentionally preventing VSE from reviewing the CVR data.  (ECF 79, at 7-9.)  Sky Jet opposes the motion on essentially two grounds.  First, Sky Jet argues that VSE has not been prejudiced by the lost CVR data.  (ECF 82, at 7-10.)  Second, Sky Jet contends that it "acted in good faith, but fell short in its attempt to preserve the data," so "at worst, the record shows Sky Jet was negligent," which Sky Jet says is not enough to show bad faith.  (ECF 82, at 10-13.)

## II.    LEGAL STANDARD

VSE appears to invoke the court's "inherent powers . . . to fashion an appropriate sanction." (ECF 79, at 6.)  While courts historically relied on their inherent powers to sanction a party for spoliating evidence, Federal Rule of Civil Procedure 37(e) was amended in 2015 to provide the exclusive framework to remedy the alleged spoliation of electronically stored information ("ESI"). *See* FED. R. CIV. P. 37 advisory committee's note to 2015 amendment (stating the rule's language "forecloses reliance on inherent authority or state law to determine when certain measures should be used").  Indeed, "[t]he exclusive nature of Rule 37(e) sanctions for the loss of ESI has been

widely recognized." *See Alsadi v. Intel Corp.*, No. CV-16-03738-PHX-DGC, 2020 WL 4035169, at *3 (D. Ariz. July 17, 2020) (collecting cases). As such, both parties' reliance on pre-2015 case law regarding spoliation sanctions is erroneous. When the alleged spoliation involves ESI, Federal Rule of Civil Procedure 37(e) governs. The court will therefore apply Rule 37(e) here.

That Rule provides for sanctions when a party fails to take reasonable steps to preserve ESI that should have been preserved in the anticipation or conduct of litigation, and the ESI is lost and cannot be restored or replaced through additional discovery. FED. R. CIV. P. 37(e). In other words, Rule 37(e) permits the court to sanction the loss of ESI only if (1) the ESI should have been preserved, (2) a party failed to take reasonable steps to preserve it, and (3) it cannot be restored or replaced. *See Stovall v. Brykan Legends, LLC*, No. 17-2412-JWL-JPO, 2019 WL 480559, at *2 (D. Kan. Feb. 7, 2019). If a party meets these three prerequisites to a finding of spoliation, the court then proceeds to assess the appropriate sanction under Rule 37(e)(1) and/or (e)(2).

Under Rule 37(e)(1), the court "may order measures no greater than necessary to cure the prejudice." FED. R. CIV. P. 37(e)(1). "Spoliation of evidence causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to the underlying claim." *CCA Recordings 2255 Litig. v. United States*, No. 19-CV-2491-JAR-JPO, 2021 WL 2212758, at *6 (D. Kan. June 1, 2021) (internal quotations and citations omitted). Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other." FED. R. CIV. P. 37(e)(1) advisory committee's note to 2015 amendment.

Under Rule 37(e)(2), the court may impose sanctions, regardless of whether there is prejudice, if the court finds that "the party acted with the intent to deprive another party of the information's use in the litigation." FED. R. CIV. P. 37(e)(2). "Negligent or even grossly negligent behavior" does not suffice. FED. R. CIV. P. 37 advisory committee's note to 2015 amendment.

Instead, the ESI must be unavailable due to "a party's intentional loss or destruction of [it] to prevent its use in litigation" because this is the conduct that "gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for [its] loss or destruction." *Id.*

## III.    THRESHOLD REQUIREMENTS

Rule 37(e) only applies when information is lost after "a duty to preserve arises." FED. R. CIV. P. 37(e) advisory committee's note to 2015 amendment.  The rule does not create a new duty to preserve; instead, it looks to the common-law duty "to preserve relevant information when litigation is reasonably foreseeable." *Id.*  When deciding "whether and when a duty to preserve" exists, the court "should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Id.*; *see also Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416-17 (S.D. Cal. 2018) (defining the scope of a duty to preserve as the same as the scope of discovery under Fed. R. Civ. P. 26(b)(1) and noting that preservation is evaluated based on a standard of reasonableness); *Marten Transp., Ltd. v. Plattform Advert., Inc.*, No. 14-CV-02464-JWL-TJJ, 2016 WL 492743, at *5 (D. Kan. Feb. 8, 2016) (stating the boundaries of the duty to preserve involve identifying when the duty arose and what evidence must be preserved).

Here, the parties do not meaningfully dispute that Sky Jet had a duty to preserve the CVR data.  Sky Jet makes a half-hearted attempt to argue that it had no duty to preserve the CVR data because "there is no legal duty in Canada to preserve CVR data for a hot start" and because VSE has not met its burden to show the CVR data is relevant.  (ECF 82, at 3, 7-9.)  The court easily rejects both arguments.  Canadian law regarding the duty to preserve does not apply.  Sky Jet filed this case in federal court in the United States and therefore its duty to preserve evidence is governed by the Federal Rules of Civil Procedure.  Specifically, Rules 26 and 37 apply here and, because of the obvious importance of the lost CVR data to the claims and defenses in the litigation, the CVR

data is relevant and Sky Jet had a duty to preserve it.  As VSE points out, "Sky Jet removed the CVR and sent it out to be downloaded for its investigation, so it belies logic that a commercial airliner would now take the position that the data is not relevant."  (ECF 83, at 2.)  Indeed, Sky Jet has preserved and used CVR and FDR data in prior litigation.  (ECF 79, at 3, 7; ECF 83, at 2.)  VSE also persuasively points out that the CVR recording "would have provided a real-time accounting of the pilots' actions and aircraft performance by the voices and sounds recorded."  (ECF 83, at 2-3.)  Such information is not speculative and would have been relevant to VSE's defense that the pilots reacted too slowly to the hot start.  Moreover, Sky Jet admits that it sent the CVR and FDR to Logic Air for readouts as part of its investigation into the cause of the engine's hot start, and further admits that "Sky Jet's purpose was preservation, but Sky Jet lost the readouts."  (ECF 82, at 1.)  The court therefore finds that Sky Jet had a duty to preserve the CVR data.

Second, Sky Jet did not take reasonable steps to preserve the data.  It sent the CVR unit to Logic Air for readouts, and Logic Air testified that it returned DVDs with the readouts to Sky Jet.  Yet Sky Jet has offered no explanation whatsoever as to what it did with those DVDs after receiving them back from Logic Air.  Gringas claims Sky Jet never received the DVDs, but the court finds his testimony not credible when juxtaposed with the nearly simultaneous email traffic in January and February of 2022 between Meagher and Labrie documenting Logic Air's delivery of the DVDs, bolstered by Meagher's corresponding deposition testimony that Logic Air delivered the DVDs to Sky Jet in the same box as the CVR.  In addition, Gringas testified that he asked and no one in Sky Jet maintenance had a copy of the DVDs, but the next day Sky Jet's former Director of Maintenance and now Chief Mechanic on the floor, Letiec, testified that no one had asked for the CVR or FDR readouts in the past six months and that he never tried to find the readouts from

the recordings.  In short, Gringas's testimony concerning the lost CVR data conflicts with all other evidence in the record.  Given the absence of any explanation whatsoever by Sky Jet as to what happened to the CVR readouts after Logic Air delivered them to Sky Jet, the only conclusion the court can reach is that Sky Jet did not take reasonable steps to preserve the ESI.

Third, the record establishes that the CVR readouts are lost and cannot be restored or replaced by additional discovery, such as the FDR data.  Although Sky Jet points out that its own expert was able to use the FDR data, including torque graphs, to show how long it took the pilots to respond to the hot start (ECF 82, at 5-6, 9-10), the court is persuaded by VSE's argument that the FDR data is not cumulative of the missing CVR recordings because "the FDR only records certain aircraft performance characteristics," not the cockpit voices and sounds.  (ECF 83, at 4.) The CVR would have provided additional important data about what actually caused the hot start.

The court therefore finds that VSE has met the three prerequisites to a finding of spoliation and will proceed to evaluate whether sanctions are warranted under Rule 37(e)(1) and/or (e)(2).

## IV.    LOSS AND PREJUDICE TO VSE

Next, the court determines whether VSE has been prejudiced by the loss of the CVR recordings such that the court "may order measures no greater than necessary to cure the prejudice" under Rule 37(e)(1).  The court has discretion to determine how best to assess prejudice in particular cases, and the evaluation includes the importance of the lost information to the litigation. FED. R. CIV. P. 37 advisory committee's note to 2015 amendment.  Rule 37(e)(1) "does not place a burden of proving or disproving prejudice on one party or the other."  *Id.*

Here, Sky Jet argues VSE was not prejudiced because Sky Jet produced the FDR recordings from the hot-start incident and the missing CVR recordings are merely cumulative of other evidence that is available to VSE and therefore not prejudicial.  (ECF 82, at 7-10.)  As discussed

above, the FDR data is not cumulative of the missing CVR recordings, and the CVR data is important to the litigation because it would have provided an additional source of evidence about what actually caused the hot start. Moreover, VSE makes a compelling argument that it is prejudiced because its expert opinions regarding the cause of the hot start "would have been strengthened with access to the [CVR] data," especially because the pilots involved in the hot-start incident are no longer employed by Sky Jet and are unavailable to testify. (ECF 83, at 1-2 (stating that VSE's expert "could not opine as to what the pilots observed with respect to when the left engine experienced fluctuations because there is no testimony from the pilots and the CVR data is not available").) The court therefore finds that VSE is prejudiced because it cannot present the CVR data as evidence in support of its expert's report and testimony that pilot error caused the hot start. *See CCA Recordings 2255 Litig.*, 2021 WL 2212758, at *6 ("Spoliation of evidence causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to the underlying claim."). Thus, sanctions are warranted under Rule 37(e)(1).

## V.    LOSS AND INTENT TO DEPRIVE

Because VSE seeks dismissal and an adverse-inference instruction, the court next considers whether Sky Jet acted with "the intent to deprive" VSE of the CVR data such that sanctions are also warranted under Rule 37(e)(2). Such intent "can be proved indirectly"—as in, a party does not need to find a "smoking gun" to prove intent to deprive. *See Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018). But there must be evidence of "a serious and specific sort of culpability" regarding the loss of the relevant ESI. *Id*. "A party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer that the party purposefully destroyed evidence to avoid its litigation obligations." *N. Am. Science Assoc., LLC v. Conforti*, No. 24-cv-287 (JWB/ECW), 2024 WL 4903753, at *16 (D. Minn. Nov. 27, 2024) (quotation and

internal brackets omitted). "A court may infer that a party acted with an intent to deprive based on circumstantial evidence." *Castro v. Smith*, No. 16-CV-8147 (JGLC), 2023 WL 5371311, at *11 (S.D.N.Y. Aug. 22, 2023); *see also Hunters Capital, LLC v. City of Seattle*, No. C20-0938 TSZ, 2023 WL 184208, at *6 (W.D. Wash. Jan. 13, 2023); *Alabama Aircraft Indus., Inc. v. Boeing Co.*, 319 F.R.D. 730, 746 (N.D. Ala. 2017) (noting "there certainly is sufficient circumstantial evidence to conclude that Boeing's agents acted with an intent to delete (or destroy) ESI"), *aff'd*, No. 20-11141, 2022 WL 433457 (11th Cir. Feb. 14, 2022).

This is not an instance where the CVR data was lost as a result of the routine deletion of electronic data that Sky Jet considered unimportant. Sky Jet specifically sent the CVR and FDR to Logic Air for readouts because it viewed the data from these devices as important in determining the cause of the hot start. Sky Jet received the CVR and FDR back from Logic Air, as well as the data from each device. Yet the CVR and FDR readouts went missing. Sky Jet argues that it simply "fell short in its attempt to preserve the data" and was "at worst, . . . negligent." (ECF 82, at 10-13.) But the court is unpersuaded by this argument for two reasons.

First and foremost, Sky Jet has provided absolutely no explanation as to how or why the CVR data disappeared from its facility. None. The court would assume that Sky Jet would provide *some* explanation as to what happened after Logic Air returned the CVR data to Sky Jet, even if that explanation was imperfect. Likewise, Sky Jet has not explained why Gringas's testimony was inconsistent with the rest of the record. Nor has Sky Jet explained the fact that Letiec testified that he never tried to find the recordings and that no one had asked him about them in the past six months. If Sky Jet had provided the court with some factual basis to understand what happened, perhaps those facts might support a finding that Sky Jet was negligent in handling the CVR data. But the lack of any factual record whatsoever to try to counter what appears to be a rather shameful

trail of events leads the court to conclude that Sky Jet has not offered any explanation—credible or otherwise—because the only facts it could offer on this front would be unfavorable.  *See, e.g.*, *Estate of Hill ex rel. Grube v. NaphCare, Inc.*, No. 2:20-cv-00410-MKD, 2022 WL 1464830, at *12 (E.D. Wash. May 9, 2022) (finding intent to deprive where litigant offered "no explanation— credible or otherwise" to explain six hours of critical missing surveillance footage); *Alabama Aircraft Indus.*, 319 F.R.D. at 746-47 (same, where party offered no credible explanation as to why it departed from protocol); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (finding plaintiff acted with intent to deprive defendant of certain ESI given the benefits to be gained from the deletion along with "the absence of any other credible explanation for" tampering with the evidence).

Second and relatedly, this conclusion is bolstered by Sky Jet's actions in covering up the loss of this data during discovery.  Sky Jet first tried to stymie VSE from learning about the missing CVR data when it responded "none known" to VSE's request for the CVR recordings in its first set of discovery requests.  This response was false and misleading.  Sky Jet knew the recordings existed because Labrie talked with Meagher the day after the hot-start incident about "want[ing] to obtain and extract the vocal sound track and data information for internal management purpose," and then followed up with an email that referenced their discussion and provided make/model information for the CVR and FDR.  (ECF 79-4, at 18-19.)  Labrie emphasized to Meagher the importance of not erasing any data from the CVR and FDR, writing in red, bold, all-caps lettering "IMPORTANT DO NOT ERASE ANY DATA FROM BOTH UNIT." (*Id.* at 18.)  Logic Air then downloaded the data from the units and, before sending the data to Sky Jet, Logic Air wrote in an email to Labrie that, "The downloads are done and recorded on two DVDs they will be in the box with the units…. The CVR channels can be listened to with a PC the one you want to listen to is

Channel 4 This is the area mic. **It's more interesting from the 30 minute mark**." (ECF 79-4, at 14 (emphasis added).) Yet Sky Jet never produced these emails between Labrie and Meagher. Instead, VSE received these emails from Logic Air on June 27, 2024, and had them translated from French to English. (ECF 79-8 ¶ 16; ECF 79, at 2 n.2.)

Despite the obvious importance of this data, Sky Jet evaded a truthful discovery response that, if provided, would have put VSE on notice that the recordings were sent to Logic Air for readouts, that Logic Air provided Sky Jet with the readouts, but that Sky Jet could not locate them to produce them to VSE. Worse yet, Sky Jet did not affirmatively tell VSE anything about Logic Air's involvement in the CVR and FDR recordings until VSE's counsel specifically questioned Gringas about Sky Jet's "none known" answer to RFP No. 14 during a Rule 30(b)(6) deposition on December 14, 2023—the day before the close of discovery. Only then did Sky Jet reveal for the first time that it had sent the FDR and CVR to Logic Air for readouts and, even then, Gringas repeatedly denied receiving those readouts back from Logic Air even though all other evidence in the record suggests otherwise. Likewise, Gringas's testimony that he "asked again yesterday and nobody there [in the maintenance department] has a copy" (ECF 79-5, at 56:16-24) was contrary to Letiec's testimony the next day that no one had asked for the CVR or FDR readouts in the past six months and he never tried to find the readout from the recordings. (ECF 79-3, at 76:1-10.) As Sky Jet's corporate representative, Gringas was unprepared and evasive in his answers to the point of being dishonest. Given Sky Jet's misleading written discovery response, untruthful corporate witness testimony about its failure to preserve, and apparent plot to conceal its loss of the recordings, it certainly appears that Sky Jet was attempting to run out the clock on discovery so that VSE would never learn about Sky Jet's spoliation of this evidence.

Even when VSE did learn that Sky Jet had once possessed but had lost the CVR data, Sky Jet did not provide much assistance to VSE in obtaining the lost data from its vendor, Logic Air, other than one letter Sky Jet sent on January 31, 2024, that requested Logic Air's "voluntary cooperation with discovery related to the FDR and CVR data and recordings from January 30, 2022." (ECF 60-1.)  But by that time, the gig was up.  The court had already told the parties during a discovery conference on January 11 that it was going to allow VSE the time and opportunity to pursue discovery to find out what happened to the missing CVR data.  And Sky Jet's January 31 letter to Logic Air did not even include Sky Jet's express consent to the requested discovery. Rather, the letter pointed out the substantial legal hurdles and costs that would inevitably result if Logic Air did not voluntarily cooperate.  (*Id.* at 2 ("Without Logic Air's voluntary cooperation, the parties will be forced to obtain a subpoena from a Canadian court to obtain the documents and deposition.").)  Logic Air did not initially respond to either Sky Jet's letter or VSE's attempts to obtain voluntary discovery, so VSE was forced to engage Canadian counsel to initiate the formal process of securing this discovery from Logic Air via a subpoena issued by the Quebec Superior Court.  (ECF 60, at 2.)  Only after all of this was VSE finally able to depose Logic Air and learn that it had sent Sky Jet the readouts from the FDR and CVR, that Sky Jet had emailed Logic Air in November 2023 to see if Logic Air still had the FDR and CVR data available, and that Logic Air still had the FDR data but never found the CVR data.  (*See* ECF 79-15.)

Sky Jet's litigation conduct—the untruthful "none known" discovery response, the evasive and dishonest 30(b)(6) testimony, the fact that it was Logic Air (not Sky Jet) that ultimately produced the emails memorializing that Logic Air did in fact deliver DVDs with the readouts to Sky Jet, and the lack of any early initiative by Sky Jet to obtain its own discovery from Logic Air about what might have happened to the readouts—suggests, at the very least, that Sky Jet tried to

run out the clock on discovery in the hopes of avoiding spoliation sanctions for its failure to preserve. Sky Jet's failure to preserve the CVR data was not ignorance or incompetence, nor the result of mere negligence. *See O'Berry v. Turner*, Nos. 7:15-CV-00064, 7:15-CV-00075, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016) (finding loss of ESI was "beyond the result of mere negligence" where an employee printed, and eventually lost, a single paper copy of downloaded ESI that it should have preserved and that the employee lost track of, and the party failed to promptly disclose the loss of the ESI). If the court did not find spoliation under the facts presented here, the court would be providing a blueprint for a party to provide evasive, misleading, and dishonest discovery about missing evidence; ultimately admit that the party does not have critical evidence that it had a duty to preserve; offer no explanation as to why not; and thereby claim there is insufficient proof of intent to deprive.

In sum, the only reasonable inference the court can draw from Sky Jet's dishonest and misleading discovery conduct—combined with the lack of any explanation whatsoever as to what happened to the CVR data after Sky Jet received it back from Logic Air *and* the fact that Sky Jet now advances the baseless argument that it had no duty to preserve under Canadian law when the Federal Rules of Civil Procedure clearly govern its preservation obligations in a case Sky Jet itself brought in a United States court—is that Sky Jet acted with the intent to deprive VSE of the CVR data in this litigation. *See Est. of Hill ex rel. Grube*, 2022 WL 1464830, at *12-*13 (finding "intent to deprive" because it was "reasonable to infer" that county allowed missing jail video to be overwritten "with an intent to avoid its litigation obligations"); *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 235-37 (D. Minn. 2019) (finding spoliating party failed to take reasonable steps to preserve text messages from key custodians and noting "[t]he Court can draw only one conclusion from this set of circumstances: that they acted with the intent to deprive Plaintiffs from

using this information"). Accordingly, the court finds that Sky Jet acted with the intent to deprive VSE from using the CVR data in this litigation under Rule 37(e)(2). Thus, sanctions are warranted under Rule 37(e)(2).

## VI.    FASHIONING THE APPROPRIATE SANCTION

Because the court finds that Sky Jet failed to preserve ESI that it had a duty to preserve and that VSE was prejudiced by the loss of the data, the court "may order measures no greater than necessary to cure the prejudice." FED. R. CIV. P. 37(e)(1). The range of such measures that the court may impose under Rule 37(e)(1) "is quite broad if they are necessary" to cure a party's prejudice. FED. R. CIV. P. 37(e)(1) advisory committee's note to 2015 amendment. Such measures include, when appropriate, precluding the party that failed to preserve information from putting on certain evidence, allowing a party to present evidence and argument to the jury regarding the loss of information, or giving instructions to the jury to assist in its evaluation of the evidence or argument. *Id.* However, because the court also finds that that Sky Jet acted with the intent to prevent VSE from using the CVR data in litigation, the court may also "presume that the lost information is unfavorable to the party," issue an adverse-inference instruction, or "dismiss the action or enter a default judgment." FED. R. CIV. P. 37(e)(2)(A)-(C). These sanctions are available regardless of whether there is prejudice. *See* FED. R. CIV. P. 37(e)(2) advisory committee note to 2015 amendment ("Subdivision (e)(2) does not include a requirement that the court find prejudice to the party deprived of the information.").

First, VSE seeks dismissal of the complaint with prejudice. Although a court has "broad discretion" to impose spoliation sanctions, it is only in "extreme circumstances" that a court will dismiss a party's claims. *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1226 (10th Cir. 2017). And the court typically issues a more direct warning before granting the sanction of dismissal.

*See, e.g., Jefferson v. Amsted Rail Co. Inc.*, No. 18-2620-KHV, 2020 WL 1672665 at *6 (D. Kan. Apr. 6, 2020) (adopting Recommendation to dismiss case with prejudice as final sanction given the plaintiff's continued refusal to satisfy discovery requests and her repeated violations of court orders compelling her to do so, including her noncompliance with the initial sanction of an attorneys' fee award).  The court finds that dismissal is not appropriate under the circumstances here.

The court will, however, order an adverse-inference jury instruction as a discovery sanction for Sky Jet's spoliation of ESI.  The court finds such an instruction is warranted in this particular case for two reasons.  For one, it appears that the missing data may very well have been favorable to VSE because Meagher emailed Labrie that the CVR data is "more interesting from the 30 minute mark."  And second, Sky Jet never produced this email.  Rather, VSE obtained it only after being forced to spend months pursuing discovery from Logic Air in Canada.  All of this supports the court's conclusion that Sky Jet did in fact act with the intent to deprive VSE from being able to use the CVR readouts in the litigation because the missing data would have been favorable to VSE.  As such, an adverse-inference instruction is appropriate under these circumstances.  The jury instruction should read as follows:

> Sky Jet was under a duty to preserve the data from its aircraft's cockpit voice recorder ("CVR") following the hot-start incident with the aircraft's left engine.  Sky Jet did not take reasonable steps to preserve the CVR data, and the CVR data was lost as a result.  The lost CVR data cannot be restored or replaced by additional information provided during this litigation.  Because of this, you may, but are not required to, infer that the lost CVR data would have been favorable to VSE and unfavorable to Sky Jet.

*See O'Berry*, 2016 WL 1700403, at *4 (issuing adverse-inference instruction as a sanction against a party for "irresponsible and shiftless behavior" that went beyond mere negligence and led the

court to but "one conclusion—that [defendants] acted with the intent to deprive Plaintiff of the use of this information at trial").

As for VSE's request for preclusion of "any evidence or testimony about what transpired in the cockpit or any communications of the pilots or the mechanic's actions and communications about the incidents," the court does not find wholesale preclusion of this category of evidence or testimony to be justified. But it would not be fair to VSE for the court to allow Sky Jet to put on testimony from the pilots, whose voices and sounds inside the cockpit would have been captured by the CVR, when VSE lacks a complete discovery record that might have allowed VSE to more effectively cross-examine any such pilot witnesses. In other words, VSE should not have its hands tied in its presentation of the evidence when Sky Jet acted with the intent to deprive VSE of a full and fair discovery record. This concern may be esoteric because the parties have been hampered in their attempts to obtain discovery from the pilots involved in the hot-start incident and they may be unavailable to testify at trial regardless. Nevertheless, to even the playing field, the court will bar the pilots from the hot-start incident from testifying at trial.[3]

Lastly, VSE seeks its reasonable attorneys' fees and expenses incurred in its efforts to obtain data from the FDR and CVR, as well as its reasonable attorneys' fees incurred in connection with the current motion. The court believes that an award of such fees and expenses is warranted because VSE would not have been forced to incur these fees and expenses if Sky Jet had been

---

[3] VSE requested an order "precluding Sky Jet's witnesses, including its expert witnesses from providing any evidence or testimony as to what transpired in the cockpit or any communications of the pilots or the mechanic's actions and communications about the incidents." (ECF 79, at 10.) But VSE's motion does not clarify the contours of this request, nor demonstrate how its broad preclusion request is based on the current record. VSE's motion also does not address how this this broad preclusion request is necessary to cure its prejudice. Therefore, the court limits its preclusion order to Sky Jet's pilots.

forthcoming about its discovery violation.  This monetary sanction is therefore tailored to cure the prejudice VSE has suffered.  The court recognizes, however, that litigating the appropriate amount of expenses too often results in the parties spending too much additional time and resources.  For this reason, the court orders VSE to serve a notice by **June 26, 2025**, informing Sky Jet of the dollar amount VSE is requesting, including whatever expenses VSE has already incurred and estimates it will incur in further briefing on this matter. Thereafter, the parties must confer to attempt to reach an agreement regarding the issue of expenses on or before **July 3**.  If the parties have not reached agreement by that date, VSE may file a motion seeking expenses by **July 11**, with the motion being limited to ten pages.  Sky Jet's response brief is due by **July 21** and is limited to ten pages. VSE's reply brief is due by **July 25** and is limited to five pages.

## VII.    CONCLUSION

VSE's motion for spoliation sanctions is granted in part insofar as the court orders an adverse-inference jury instruction.  The court will also preclude Sky Jet from offering testimony by the aircraft pilots who were operating the aircraft when the hot-start incident occurred.  And the court will award VSE its reasonable attorneys' fees and expenses incurred to discover what happened to the CVR readouts and in connection with the current motion.  But the court will not recommend dismissal or default judgment, nor will it preclude any broader scope of evidence.

**IT IS THEREFORE ORDERED** that Defendant VSE Aviation Services, LLC's Motion for Spoliation Sanctions (ECF 78) is granted in part and denied in part as set forth above.

**IT IS SO ORDERED.**

Dated June 12, 2025, at Kansas City, Kansas.

<u>s/ Angel D. Mitchell</u>
Angel D. Mitchell
U.S. Magistrate Judge

22